391 So.2d 684 (1980)
THE FLORIDA BAR, Complainant,
v.
Jerome A. SIMONS, Respondent.
No. 59312.
Supreme Court of Florida.
December 11, 1980.
Harris K. Solomon, Bar Counsel and Lance J. Thibideau, Asst. Staff Counsel, Fort Lauderdale, Wilson C. Atkinson, III, Chairman, Grievance Committee 17 "D", Hollywood, and James P. Hollaway, Deputy Staff Counsel, Tallahassee, for complainant.
Louis M. Jepeway, Jr. of Jepeway & Jepeway, Miami, for respondent.
PER CURIAM.
This disciplinary proceeding by The Florida Bar against Jerome A. Simons, a member of The Florida Bar is presently before us on complaint of The Florida Bar and Report of Referee. Pursuant to Rule 11.06(9)(b) of the Integration Rule of The Florida Bar, the referee's report and record were duly filed with this court. No petition for review pursuant to Rule 11.09(1), Integration Rule has been filed.
Having considered the pleadings and evidence, the referee found as follows:
1. Jerome A. Simons is, and at all times material to this action, a member of the Florida Bar.
Sometime previous to June 21, 1974, a Mr. and Mrs. Powell, with the assistance *685 of a real estate broker, decided to purchase a home owned by Mr. and Mrs. Ardito. The original purchase price of this home was $38,000, which was evidenced by a contract executed on March 8, 1974. However, neither the purchasers, nor the home, qualified for Veteran's Administration financing in that amount. The real estate broker prepared a second contract for the sellers and purchasers dated approximately March 28, 1974 reflecting a sales price of $33,000. This submission to Veterans' Administration financing was approved, both as to the purchasers and subject real property. The respondent was not involved in any of the foregoing.
2. On June 21, 1974 the real estate broker brought the sellers and purchasers to the office of the respondent requesting assistance in the preparation of a promissory note evidencing the existence of a $5,000 indebtedness owed by the Powells to the Arditos. During the preparation of the promissory note the respondent ascertained the Powells were purchasing the Ardito's home. The respondent recommended the $5,000 promissory note be secured by a mortgage being placed upon the home being purchased by the Powells and the mortgage being recorded immediately after the real estate transaction was closed. The respondent was not present at the real estate closing but was advised in July of 1974 the closing had taken place, at which time he recorded the mortgage.
3. In the Spring of 1975 the respondent represented Gloria Hood, a former real estate broker, in a suit for commissions and for the first time learned there had been two contracts between the Powells and Arditos for the purchase of the Ardito's home. During this litigation the respondent became aware that the $5,000 promissory note and mortgage he had prepared the previous year for these parties represented the difference between the first contract price which had been rejected for financing by the Veteran's Administration, and the second contract price which had been accepted for financing by the federal agency. The respondent became aware the $5,000 promissory note and mortgage, evidencing the so-called "preexisting indebtedness" owed by the Powells to the Arditos, was in actuality a hidden portion of the purchase price of the Ardito's home.
4. The Veteran's Administration began an investigation into the sale of the Ardito's home. The Arditos and Powells contacted the respondent and advised him of the investigation by the federal agency. The purpose of the investigation was to determine whether there had been additional unauthorized consideration flowing from the Powells to the Arditos in violation of the laws pertaining to Veteran's Administration financing. During this meeting the respondent was advised by the Powells and Arditos that there had not been a preexisting $5,000 indebtedness between them. In fact, the $5,000 promissory note which was secured by a mortgage evidenced the deferred portion of the purchase price of the Ardito's home in addition to the $33,000 purchase price reported to the Veteran's Administration.
5. The respondent, after being informed of the facts surrounding the sale of the Ardito's home, advised the Arditos and the Powells when called upon to testify under oath, to persist in their story concerning the $5,000 preexisting indebtedness. The respondent advised the Powells and the Arditos, when called upon to testify under oath, to state there was no relationship between the $5,000 note and the mortgage securing it and the purchase of the home, even though the respondent now knew that the note, in fact, was part of the consideration for the purchase of the Ardito's home. The respondent advised the Powells to create I.O.U.'s to support the story of a preexisting indebtedness, even though the respondent knew that there was no such indebtedness. The respondent knew there was a possible violation of federal law in the Powell's payment of concealed consideration.

*686 6. During the course of the Veteran's Administration investigation the respondent prepared and delivered an affidavit to the investigator for the agency. The affidavit, while truthful, was incomplete, in that, it did not state all the facts concerning the Powell and Ardito transaction of which the respondent was then aware. On November 5, 1979 the respondent was advised by the United States Attorney for the Southern District of Florida that he was a target for a grand jury investigation into allegations of subordination of perjury. As a result of a letter dated November 5, 1979 from the United States Attorney, the respondent consulted counsel. After the consultation and upon advice of counsel, he contacted the Florida Bar and the United States Attorney in an effort to cooperate with both entities.
7. At the hearing before the referee on June 20, 1980, the respondent, under oath, testified he knew at the time he rendered his advice to the Arditos and Powells to testify under oath, consistently with their fabricated story concerning the $5,000 preexisting indebtedness, that he was rendering improper advice. No evidence has been submitted to the referee of prior or subsequent professional misconduct by the respondent. The respondent has practiced law and been a member of the Michigan Bar from 1952 through 1961 and a member of the Florida Bar from 1961 to the present time. Jerome A. Simons is a sole practitioner engaged in an office practice and does not participate in courtroom litigation. When initially confronted by his clients in the matter which now rests before the referee, Mr. Simons admitted he knew the advice he was rendering was wrong; he sought no council [sic] from his colleagues, nor referred to any books for guidance relating to the situation in which he found himself. However, upon being exposed, has admitted his participation in this matter.
8. Jerome A. Simons has violated Disciplinary Rule 1-102(A)(4, 5 and 6), in that, he did engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; he engaged in conduct that is prejudicial to the administration of justice and he engaged in conduct which adversely reflects upon his fitness to practice law.
9. Jerome A. Simons violated Integration Rule of the Florida Bar 11.02(3)(a) by being guilty of the commission of acts contrary to honesty, justice and good morals in the course of his relations as an attorney within the State of Florida and is a member of the Florida Bar.
The referee recommends that respondent be found guilty of misconduct justifying disciplinary measures and recommends that respondent be suspended from the practice of law for three months and receive a public reprimand.
Having carefully reviewed the record, we approve the findings and recommendations of the referee.
Accordingly, respondent, Jerome A. Simons, is hereby suspended from the practice of law for a period of three months commencing December 22, 1980, and respondent is publicly reprimanded and the publication of this order and judgment shall constitute a public reprimand.
The Motion for Waiver of Requirement of Notice to Clients filed by attorney for respondent is hereby denied.
Execution is hereby directed to issue against respondent for costs in the amount of $353.50.
It is so ordered.
BOYD, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
ADKINS, Acting Chief Justice, concurring in part and dissenting in part:
I concur in the approval of the findings and recommendations of the referee but would grant the Motion for Waiver of Requirement of Notice to Clients.